**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LYDIA JOHNSON,**
        **Plaintiff,**

 **v.**                  **5:15-CV-1360**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

### I. INTRODUCTION

  Plaintiff Lydia Johnson brought this action under the Social Security Act, 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security denying her application for benefits. Plaintiff alleges that the Administrative Law Judge committed reversible error by failing properly to apply the treating physician rule and failing to make an adequate credibility determination. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

### I. PROCEDURAL HISTORY

  On August 28, 2012, Plaintiff filed an application for Supplemental Security Income under Title II of the Social Security Act. On October 4, 2012, Plaintiff filed an application for disability insurance benefits under Title XVI of the Social Security Act. An initial

1

administrative determination denied the claims on December 5, 2012. Plaintiff filed a timely request for a hearing on January 27, 2012. Administrative Law Judge ("ALJ") Edward I. Pitts presided over a hearing on June 30, 2014. The ALJ issued an unfavorable decision on July 30, 2014, which the Plaintiff appealed. On October 8, 2015, the Social Security Appeals Council declined to assume jurisdiction, making the ALJ's decision the Commissioner's final decision. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II. FACTS

The parties do not dispute the underlying facts of this case. The Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III. THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. See Social Security Administrative Record ("R."), dkt. # 9, at 13-25. First, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since July 7, 2011. Id. at 15. Second, the ALJ found that Plaintiff suffered from a severe impairment: fibromyalgia with headaches, irritable bowel syndrome, and cognitive impairment. Id. at 15-16. The ALJ ruled that this impairment caused "a mild limitation in activities of daily living." Id. at 17. The ALJ also found that Plaintiff had "only mild limitations in social functioning." Id. The ALJ concluded that Plaintiff had moderate, but not marked, limitation in concentration, persistence and pace. Id. The ALJ also found

2

that Plaintiff was "not dependent on others to feed her, dress her, or bathe her." Id. at 18. Plaintiff was "able to use the toilet independently" and "able to follow directions." Id. Third, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in the Social Security regulations. Id. at 18-19. Fourth, based on medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light exertional work. Id. at 18-24. The ALJ found Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 24.

The ALJ summarized the medical evidence and Plaintiff's testimony. Id. at 20-24. The ALJ gave the opinion evidence of Plaintiff's treating physician, Ayesha Aziz, M.D., little evidentiary weight because it was largely based on Plaintiff's subjective complaints. Id. at 21. Plaintiff's treatment records contained no abnormal clinical findings. Id. Her neurological examination found "no strength or sensory deficits in any muscle group," and her attention span and concentration were normal. Id. The physical examination by the independent medical examiner, Elke Lorensen, M.D., concluded Plaintiff's "gait was normal and she was able to walk on her heels and toes without difficulty." Id. at 20. Dr. Aziz opined that Plaintiff "should never twist, stoop, crouch, squat, or climb ladders" and can "only rarely climb stairs." Id. at 20. Clinical findings documented in Dr. Lorensen's report provided otherwise. See id. at 336. Indicating moderately limited postural functionality, the ALJ determined Plaintiff was able to flex to 90 degrees, extend to 15 degrees, laterally flex to 20 degrees, and rotate to 20 degrees—retaining full range of motion of her hips, knees, and ankles. R. at 21. Dr. Lorensen indicated that an assistive

3

device was not medically necessary. Id. Plaintiff also reported she could "cook, clean, and shower, bathe, and dress herself." Id. at 20. The ALJ noted that additional medical examinations found "no muscle atrophy, sensory deficits, or strength deficits" in Plaintiff's lower extremities. Id. Plaintiff's physical therapy records indicate that she "has no restrictions for lifting, weight-bearing, or range of motion." Id. at 22.

In determining Plaintiff's RFC, the ALJ gave the opinion evidence of Plaintiff's mental functioning by the independent medical examiner, Christina Caldwell, Psy.D., partial weight. Id. at 22. The evaluation found that Plaintiff has "limitations in her ability to perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress." Id. The ALJ reasoned that Plaintiff (1) did not seek mental health treatment, (2) specifically denied symptoms of anxiety or depression, and (3) had never lost a job due to problems getting along with others. Id. at 22. The psychological examination by the State Agency psychological consultant, Edward Kamin, Ph.D., concluded Plaintiff had "no significant limitations in her ability to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work related decisions, interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others." Id. at 102-103. The ALJ gave Dr. Kamin's opinion evidence great weight in determining Plaintiff's RFC because it was "a

4

medical opinion" that was "consistent with and supported by the clinical findings." Id. at 23.

The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's statements "concerning the intensity, persistence and limiting effects" of these symptoms were "not entirely credible." Id. at 19. The ALJ explained that Plaintiff "failed to produce appropriate, probative evidence as required by the Social Security Act" to substantiate her "subjective allegations of disabling symptoms." Id. There was also no imaging evidence or other medical evidence of any abnormality that would cause Plaintiff's migraines. Id.

Finally, the ALJ classified Plaintiff's previous work experience "as a dental assistant, legal secretary, and machine operator" as semi-skilled work. Id. at 23. The ALJ determined that Plaintiff was "unable to perform past relevant work." Id. at 23, 84. The ALJ found that the Plaintiff could perform the necessary activities of unskilled light exertional work "except she is able to only occasionally climb ladders or stoop." Id. at 18, 24, 83.

The ALJ asked a vocational expert, Josiah Pearson, to testify about Plaintiff's ability to perform certain tasks and the availability of unskilled light exertional work in the national economy based on the RFC set by the ALJ. Id. at 83-84. The vocational expert testified that there were 1,241,717 jobs as a cashier, 2,475,636 positions as a sales attendant, and 87,932 positions as a mail clerk in the national economy, and that these jobs fit Plaintiff's limitations. Id. at 84-85. Armed with this information, the ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and found her "not disabled." Id. at 21.

5

**IV.    STANDARD OF REVIEW**

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  See Tejada, 167 F.3d at 773.  A Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled.  The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted).

In Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997) (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).  Although the reviewing court must give deference to the Commissioner's decision, a reviewing court

must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V.   DISCUSSION

Plaintiff offers two grounds for challenging the ALJ's opinion. The Court will address each in turn.

### A.   Treating Physician Rule

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Ayesha Aziz. See dkt. #10. The ALJ assigned "little evidentiary weight" to Dr. Aziz's opinion that Plaintiff would need to sit for one hour at a time, take three to four unscheduled five-minute breaks in an eight-hour day, and be absent one day per month because of "emotional factors, anxiety, and depression that affect Plaintiff's physical conditions, symptoms, and functional limitations." R. at 21. Plaintiff contends substantial evidence does not support this finding.

An ALJ is required to give a treating physician's opinion controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight.'" Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004));

7

Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician . . . the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth [his] reasons for the weight [he] assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

The ALJ offered the following reasons for providing "little evidentiary weight" to Dr. Aziz's opinion:

> Dr. Aziz's opinion is given little evidentiary weight because it is based, in large part, on the claimant's subjective complaints as evidenced by the letter the claimant provided to Dr. Aziz to guide her in completing the form (Exhibits B13E and B10F). There are no clinical findings documented in Dr. Aziz's treatment notes to substantiate the claimant's complaints (Exhibit B9F. P. 36-65). In fact, Dr. Aziz's treatment notes did not document any abnormal clinical findings in her treatment records. Neurological examination findings by a neurological consultant were normal, showing no strength or sensory deficits in any muscle groups (Exhibit B9F, p. 29). The clinical findings documented in the consultative examiner's report also do not support Dr. Aziz's opinion. For example, the claimant was able to flex to 20 degrees, which contradicts Dr. Aziz's opinion regarding her postural limitations (Exhibit B5F, p. 4). The claimant's gait was normal and she was able to walk on her heels and toes without difficulty (Exhibit B5F, p. 3). She

8

> used no assistive device (Exhibit B5F, p. 3). The consultative examiner did not indicate that an assistive device was medically necessary (Exhibit B5F, p. 3). The claimant had somewhat limited range of motion of her lumbar spine, but was able to flex to 90 degrees, extend to 15 degrees, laterally flex to 20 degrees, and rotate to 20 degrees (Exhibit B5F, P. 4). The Claimant retained full range of motion of her hips, knees, and ankles (Exhibit B5F, P.4). Straight leg raise tests were negative (Exhibit B5F, P. 4). The claimant's joints were stable and non-tender. She had no muscle atrophy, sensory deficits, or strength deficits in her lower extremities (Exhibit B5F, p.4). These findings suggest that the claimant has no significant limitations for standing, walking, or postural activities, contrary to Dr. Aziz's opinion.
>
> There is no objective evidence in the record to support Dr. Aziz's opinion that the claimant needs to take frequent breaks, is only able to sit for four hours, or needs to alternate positions frequently. The evidence also does not support that the claimant must use a cane to ambulate. Rather, the claimant's gait was normal during the consultative exam.

R. at 18.

Plaintiff argues that the ALJ's reasoning "failed to apply the treating physician rule." See dkt. #10. Plaintiff points out that the social security regulations permit Dr. Aziz to form an opinion based upon subjective complaints. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). Plaintiff also claims the ALJ relied exclusively upon the consultative examiner's report without citing the "other relevant factors for weighing a treating source opinion." See dkt. #10.

The Court finds that substantial evidence supported the ALJ's findings. The evidence cited above indicates that the ALJ considered "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Greek, 802 F.3d at 375. Plaintiff's alleged

9

psychiatric symptoms were not reflected in her medical records, nor was there any record of her having alleged these symptoms or seeking mental health treatment prior to her application. R. at 22. The ALJ pointed to the fact that Plaintiff "specifically denied symptoms of anxiety or depression." Id. Dr. Aziz's opinion also was not consistent with other evidence in the record showing unremarkable medical tests and examinations. See Brogan-Dawley v. Astrue, 484 Fed. Appx. 632, 633-34 (2d Cir. 2012); Zabala v. Astrue, 595 F.3d 402, (2d Cir. 2010); 20 C.F.R. § 404.1527(d)(2). Dr. Aziz's opinion did not cite specific evidence supporting her opinion other than the Plaintiff's complaints and self-reported symptoms. See R. 21-23.

Plaintiff also contends that if there was any ambiguity, the ALJ "was under a duty to attempt to re-contact Dr. Aziz for clarification." See dkt. #10. Plaintiff cites a number of cases she claims demonstrate the ALJ's "duty to attempt to re-contact [Dr. Aziz] for clarification." Id. While there is an "affirmative obligation to develop the administrative record," recontact is only necessary if existing evidence is "inadequate" to determine whether Plaintiff was disabled. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); 20 C.F.R. § 404.1512; Brogan-Dawley, 484 Fed. Appx. at 634. In Rosa, a case cited by Plaintiff, the court noted that few if any treatment notes existed and that there were "numerous gaps in the administrative record[.]" Rosa v. Callahan, 168 F.3d 72, 79-80 (2d Cir. 1999). One assessment from a doctor consisted of only one "wholly conclusory" page. Id. at 79-80.

Here, the record was sufficient to make reaching out to Dr. Aziz for clarification unnecessary. The ALJ utilized a wealth of evidence, treatment information and other forms of data from Dr. Aziz and other independent medical examiners in deciding

Plaintiff's case. Id. at 19-23. The record contains numerous entries from Dr. Aziz detailing laboratory tests, physical examinations, and treatment plans. R. at 302-328, 340-365, 379-441. The record also contains a report by Dr. Elke Lorensen detailing Plaintiff's medical history, laboratory tests, and physical examinations, as well as psychiatric evaluations by Dr. Christina Caldwell and Dr. Edward Kamin. R. at 335-339, 331-334, 92-102. Plaintiff does not reference a specific document she believes ambiguous and which triggered in the ALJ a duty to contact Dr. Aziz. Here, unlike Rosa, all the reports in the record are more than conclusory. Rosa, 168 F.3d at 79-90; R. at 391-392. The record contains details on several general, physical, and psychiatric examinations performed on Plaintiff, a history of Plaintiff's present illness, and detailed information about Plaintiff's health as a whole. R. at 244-442.

Substantial evidence supports the weight the ALJ assigned to Dr. Aziz's opinion, the Plaintiff's motion will be denied in this respect.

### B.    Credibility Determination

Finally, Plaintiff argues that the ALJ's credibility determination was improper. See dkt. #10. The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely credible." R. at 19.

The Commissioner uses a two-step process to evaluate claimants' contentions of pain. 20 C.F.R. § 404.1529(c)(1); see Meadors v. Astrue, 370 Fed. Appx. 179, 183 (2d Cir. 2010). First, the ALJ must determine whether claimant's impairment is a "medically determinable impairment that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529(c)(1); see Meadors, 370 Fed. Appx. at 183. Next, the ALJ must "evaluate the intensity and persistence of those symptoms considering all of the available

11

evidence." Meadors, 370 Fed. Appx. at 183; 20 C.F.R. § 404.1529(c)(3)(i)-(vii). If the "claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." Meadors, 370 Fed. Appx. at 183-84; 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Among the factors the ALJ may consider in a credibility inquiry are compliance with "treatment, other than medication, you receive or have received for relief of your pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Social security regulations provide that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).[1] The ALJ may not, however, draw an inference "about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Vincent v. Astrue, 08 CV 0956, 2010 U.S. Dist. LEXIS 146213 at *1 (N.D.N.Y. 2010); SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).

---

[1]Treatment is only one of seven factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements." These seven factors are "(1) [t]he individual's daily activities; (2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) [f]actors that precipitate and aggravate the symptoms; (4) [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 LEXIS 4 (July 2, 1996).

Substantial evidence supports the ALJ's finding that Plaintiff's statements were "not entirely credible." Plaintiff points to Williams o/b/o Williams v. Bowen to argue that the ALJ should have set forth his reasons for the unfavorable decision with "sufficient specificity." dkt. #10; Williams o/b/o Williams v. Bowen, 859 F.2d 255, 260-261 (2d Cir. 1988). In Williams, the ALJ found the subjective testimony not credible without setting forth reasons for rejecting consistent and uncontradicted lay testimony, where the subjective testimony of pain and disability was consistent with the objective medical facts and expert opinions. Williams, 859 F.2d at 261. Here, the ALJ listed several inconsistencies between the objective evidence and Plaintiff's subjective testimony with "sufficient specificity to permit intelligible plenary review of the record." R. at 16-25; Williams, 859 F.2d at 261. First, Plaintiff alleged a history of lumbar disease or herniated discs in her lumbar spine. Id. at 281-289. The ALJ found no MRIs in the record to substantiate the allegations, and several x-rays of the lumbar spine were negative. Id. at 314, 332, 337. Second, Plaintiff alleged headaches and physical pain. Id. at 52. In rejecting Plaintiff's allegations, the ALJ referenced the MRI of her brain, which was normal, and the examinations that showed normal gait, posture, and coordination. Id. at 381, 322, 318. Plaintiff also alleged confusion, post-traumatic stress, and cognitive impairment due to "fibro-fog." Id. at 203, 331. Citing to the only mental exam in Plaintiff's treatment records, which was normal, and Plaintiff's denial of any anxiety or depression on two different occasions, the ALJ found Plaintiff's subjective testimony contradicted and inconsistent. Id. at 203, 331. Substantial evidence supports this finding.

Plaintiff also points to Meadors v. Astrue to argue that the ALJ's assessment of Plaintiff's credibility "prevents meaningful review." dkt. #10; Meadors v. Astrue, 370 Fed.

Appx. 179, 185-186 (2d Cir. 2010). The impropriety that Meadors addressed concerned an ALJ who supplanted uncontradicted expert testimony with his lay interpretation of diagnostic tests when determining the claimant's credibility. See Meadors, 370 Fed. Appx. at 183. Here, the ALJ relied on objective evidence, expert opinions, and Plaintiff's inconsistent statements in evaluating her credibility. R. at 16-24; see Meadors, 370 Fed. Appx. at 184-185. In considering Plaintiff's daily activities, the ALJ found several inconsistencies with the limitations and symptoms she alleged. R. at 20. Plaintiff admitted to Dr. Caldwell that she was able to dress, bathe, groom herself, do the laundry, and grocery shop. Id. at 333. Plaintiff admitted the same to Dr. Lorensen, but denied doing laundry or shopping. Id. at 337. At the Hearing, Plaintiff denied an ability to dress and groom herself, bathe, cook, clean, do the laundry, or grocery shop without assistance. Id. at 60-62.

In assessing the Plaintiff's credibility, the ALJ also found several inconsistencies with the severity of her alleged symptoms. Id. at 19. Plaintiff reported relief from medications on four different occasions to her treating physician. Id. at 306-308, 429. Plaintiff also indicated to her treating physician that physical therapy helped relieve her musculoskeletal symptoms. Id. at 306. At the Hearing, Plaintiff denied experiencing any relief from any medications or from physical therapy. Id. at 64, 69.

The ALJ properly developed the record and Plaintiff's credibility determination was supported by substantial evidence. Plaintiff's motion will be denied in this respect.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The

decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

_____
Thomas J. McAvoy
Senior, U.S. District Judge

Dated: December 1, 2016